SHUMWAY & al. *versus* REED & al.

The giving of a negotiable note for a simple contract debt, raises a presumption of payment.

That presumption may be overcome by testimony.

Of the evidence which the Court, sitting as a jury, will deem sufficient to overcome that presumption.

ON REPORT, from *Nisi Prius,* SHEPLEY, C. J. presiding.

DEBT ON BOND. The plaintiffs were merchants, resident in Boston. One Reed, a trader in Bath, was indebted to them. They sent their demand to an attorney to be collected or secured. The attorney took a bond to the plaintiffs signed by said Reed and by one Tallman, in the penal sum of $5000. It was dated Jan. 25, 1847, and it was upon the condition that, "whereas said Reed and Tallman, either jointly or severally, are indebted to said Shumway & Snow, and contemplate becoming further indebted to them for goods and cash. — Now if said Reed and Tallman, or either of them shall pay to said Shumway & Snow, all sums of money which are now due from them or either of them, to said Shumway & Snow, or which may hereafter become due from them or either of them, at the several times when they shall become due and payable, then this obligation to be void, otherwise to remain in full force and virtue. Said indebtedness not to exceed three thousand dollars."

This action is upon that bond.

The plaintiffs introduced several negotiable notes, made to

them by Reed, each one payable on time. Five of them, amounting to about $1200, were dated before the giving of the bond, and three of them, amounting to about $1290, were given after the date of the bond; also three orders, drawn, after date of the bond, by Reed upon the plaintiffs, amounting to about $530, which they had paid and taken up. The plaintiffs, against the defendants' objection, introduced evidence to show that the notes were given for goods sold to Reed. The introduction of the notes and drafts was objected to. Certain letters were introduced by the respective parties.

The case was then submitted to the Court upon the evidence.

*Paine,* for the plaintiffs.

*Tallman,* for the defendants.

I. The bond gives protection to the obligees only for "goods or cash," by them sold or advanced.

There is no legal evidence that the notes were given by Reed, either for goods or cash. The evidence was inadmissible to show what was the consideration of the notes, thereby to convert them into mere evidences of goods sold. Could the account for the goods be sued, and the action maintained upon the evidence furnished by the negotiable notes? Surely not.

II. If the evidence, as to what was the consideration of the notes, was admissible, we say —

1. That the taking of the notes on time from Reed, was such an extension of the credit as discharged Tallman, the guarantor, for the plaintiffs' letter admits that he was but a guarantor. That guaranty was only for goods and cash, not for other classes of contracts.

2. The notes given by Reed for the goods were negotiable, and therefore constituted a payment at the moment they were taken. True this presumption is repellable by testimony. But the evidence, instead of repelling, very strongly sustains the presumption that they were taken in payment.

III. As to the drafts; they were drawn by Reed upon the plaintiffs and they paid them. The legal presumption is, that Reed had funds in the hands of the drawees, with which the payments were made. That presumption is yet unremoved.

RICE, J. — The bond was given as collateral security for a debt which was due from the defendant Reed, to the plaintiffs, and also as security for other debts which the defendants contemplated contracting with the plaintiffs.

So far as the preëxisting indebtedness of Reed is concerned, there is no reason suggested why it should not be secured by the bond. The case finds that the plaintiffs' claim had been forwarded to an attorney for collection, and by him the bond in suit was taken, and in its terms covers that indebtedness.

As to the claims which originated subsequent to the execution of the bond, the defendants contend, that they are not liable in this action, because the bond was given only as security for " goods and cash," to be delivered in the future, and because they affirm, for all the goods delivered subsequent to the date of the bond, payment was made by the negotiable promissory notes of Reed.

The rule of law in this State and in Massachusetts, is that the giving of a negotiable note is *prima facie* evidence of the payment and satisfaction of a simple contract debt. But this legal presumption is by no means conclusive, but may be rebutted by proof that such was not the intent of the parties.

The simple question for the consideration of the Court, is whether the facts in the case overcame this presumption. To determine this question, the situation and acts of the parties must be considered. Reed was indebted to the plaintiffs, they were seeking to enforce payment or obtain security, he desired extension of time for payment, and additional credits for goods and cash. For this purpose the bond was given. Now is it credible that those plaintiffs having thus obtained security not only for past indebtedness, but for future advances, should immediately thereafter voluntarily and intention-

ally disregard that security, and rely solely upon the note of the man whose ability to pay they manifestly distrusted? Such a proposition carries improbability on its face. And that improbability is increased by the letters of the parties in the case.

So too as to the drafts; we are of opinion that the situation of the parties and the evidence in the case authorizes the inference, that they were paid by the plaintiffs out of their own funds, and not from the funds of the defendants or either of them.

Whether the conditions of the bond are such as to restrict the credits to be covered by it to "goods and cash" only, is not certain. But as on the other branch of the case we think the plaintiffs entitled to recover, it becomes unnecessary to express an opinion upon that point.

According to agreement a default is to be entered for the several sums due, as specified in the report, with interest thereon from the time they severally became payable, or by their terms were to draw interest.

SHEPLEY, C. J., and HOWARD and APPLETON, J. J., concurred.